UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AERONAUTICAL INDUSTRIAL DISTRICT LODGE 776 And LOCAL LODGE 2771,<br><br>Plaintiffs<br><br>v.<br><br>M1 SUPPORT SERVICES, LP,<br><br>Defendant | Civil Action No. _____ |

## COMPLAINT

International Association of Machinists and Aerospace Workers, Aeronautical Industrial District Lodge 776 and Local Lodge 2771, Plaintiffs, complain of M1 Support Services, LP, Defendant, as follows.

### Preliminary Statement

1. This is an action arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce an Arbitration Award under the parties' collective bargaining agreement.

### Parties

2. International Association of Machinists and Aerospace Workers, Aeronautical Industrial District Lodge 776 (*District 776*), is an intermediate labor organization engaged in representing or acting for employees in an industry affecting interstate commerce as defined in the Labor Management Relations Act (29 U.S.C. §§ 142(1), (3) and 152(5), (6) and (7)). District 776 is based in Fort Worth, Texas and represents several thousand employees concerning wages, hours, and other terms and conditions of employment. District 776 is affiliated with International Association

**Complaint – Page 1**

of Machinists and Aerospace Workers, AFL-CIO (*IAMAW*), an international labor organization based in Upper Marlboro, Maryland.

3.     Local Lodge 2771 (*Local 2771*) is a local labor organization engaged in representing or acting for employees in an industry affecting interstate commerce as defined in the Labor Management Relations Act (29 U.S.C. §§ 142(1), (3) and 152(5), (6) and (7)). Local Lodge 2771 is based in Wichita Falls, Texas and represents employees concerning wages, hours, and other terms and conditions of employment. Local 2771 is affiliated with IAMAW and District 776. District 776 and Local 2771 are referred to jointly as *Union*.

4.     M1 Support Services, LP (*M1* or *Company*), is a Texas limited partnership with its headquarters located in Denton, Texas. M1 is an employer in an industry affecting interstate commerce and conducts operations at Sheppard Air Force Base in Wichita County, Texas.

## Jurisdiction

5.     The Court has subject matter jurisdiction of this civil action pursuant to 29 U.S.C. § 185, 28 U.S.C. § 1331, and 28 U.S.C. § 1337(a).

## Venue

6.     Venue is proper in this judicial district under 29 U.S.C. § 185(a) in that this civil action may be brought in any District Court of the United States having jurisdiction of the parties. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to this action occurred in this judicial district and division.

## Facts

7.     IAMAW has a major presence in the aerospace, transportation, and automotive industries and various other sectors of the economy. The International Union has approximately 600,000 active and retired members in the United States.

**Complaint – Page 2**

8. M1 is engaged in the business of aircraft maintenance and modification; flight support; and supply chain management for military, commercial derivative, and civil fixed-and rotary wing aircraft. M1 has a federal service contract with the U.S. Air Force to perform repair and maintenance services at Sheppard Air Force Base.

*Collective Bargaining Relationship*

9. District 776/Local 2771 and M1 have had a collective bargaining relationship for many years. The Union was at all times relevant to this action, and is now, the exclusive bargaining representative of all production, maintenance, and technical employees, including all leadmen, senior mechanics, mechanics, senior specialists, specialists, inspectors, senior controllers, workload controllers, chauffeurs, truck drivers, janitors, and clerks employed at the Company's Sheppard Aircraft Maintenance Contract Operations at Sheppard Air Force Base as defined in Article Three of the parties' collective bargaining agreement (*CBA*).

10. The CBA became effective August 19, 2017, and remained in effect until May 17, 2020, in accordance with its terms. (This contract is referred to herein as the *2017 CBA*.) The parties have since entered into a successor collective bargaining agreement that will remain in effect until 2024. At all relevant times, the 2017 CBA governed the wages, hours of work, and other terms and conditions of employment of employees represented by the Union. The 2017 CBA is included in the *Appendix to Complaint* as Exhibit 1 and is incorporated herein by reference. The current CBA is included in the *Appendix to Complaint* as Exhibit 2.

11. Articles 21 and 22 of the 2017-2020 CBA set forth the parties' grievance and arbitration procedures. These procedures are applicable to the arbitration forming the basis of this civil action.

12. Any arbitrator whom the parties select to resolve a dispute involving the interpretation of contract language is empowered to rule on a grievance that has not been resolved through a

**Complaint – Page 3**

negotiated committee procedure. Article 22, Section 5 of the 2017 CBA provides in relevant part: "The decision of the Arbitrator, within the purview of his/her authority, shall be final and binding on all parties."

*Grievance and Arbitration Proceedings*

13. On April 8, 2019, the Union filed a grievance in this case (Grievance No. 2019-006) asserting that the employer violated the CBA by discharging employee Michael Bavousett without just cause. The grievance is included in the *Appendix to Complaint* as Exhibit 3 and is incorporated herein by reference for all purposes.

14. The parties met and conferred to resolve the grievance according to the procedures established in the CBA. The parties were unable to resolve the grievance and proceeded to arbitration in accordance with Article 21, Section 10 of the 2017 CBA, which provides in relevant part: "Any grievance arising out of interpretation or alleged violation of the terms and conditions of this Agreement which has been properly processed according to this grievance procedure and has not been satisfactorily adjusted or settled may then be appealed to arbitration as providing in this Agreement. . ."

15. The parties selected Peter J. Clarke as Arbitrator from a panel of arbitrators presented by the Federal Mediation and Conciliation Service (*FMCS*). At all relevant times Arbitrator Clarke was a neutral and independent decision-maker who was and is authorized to issue a final and binding award in the labor dispute.

16. The arbitration was administered under FMCS No. 190715-09025. Arbitrator Clarke conducted a hearing in Wichita Falls, Texas on August 12, 2020. Doyle Huddleston, District 776 Assistant Directing Business Representative, and Bud Dulworth, District 776 Business Representative, represented the Union. Jeffrey W. Toppel, attorney, Cheryl A. Shaw, Human

Resources Director, and Michael J. Saville, 80th Aircraft Maintenance Program Manager, represented the Company. The parties presented extensive evidence and arguments. The parties also submitted post hearing briefs to Arbitrator Clarke on September 24, 2020.

17. The Union asserted that M1 did not have just cause to discharge the Grievant after he made a comment that the Company construed as a threat. Article 20, Section 7, of the 2017 CBA contains the discharge and discipline procedures. This section provides: "Progressive discipline will be used except in severe violations that allow for immediate termination of employment."

18. The Union requested the Arbitrator to grant the grievance and order the employer to reinstate Bavousett with a make-whole remedy and expunge the discharge decision from the relevant personnel records.

*Arbitration Award*

19. On September 3, 2021, Arbitrator Clarke rendered a complete Decision and Award granting the grievance in its entirety. A copy of the Decision and Award is included in the *Appendix to Complaint* as Exhibit 4 and is incorporated herein by reference for all purposes.

20. Arbitrator Clarke found that M1 did not have just cause to discharge the Grievant and thus had breached the CBA. The Arbitrator concluded that M1 did not have sufficient evidence of misconduct that warranted immediate discharge without first using progressive discipline and that the Company had made a rushed decision without providing the Union an opportunity to establish that he did not pose a risk to himself or others.

21. Arbitrator Clarke sustained the grievance and directed M1 to comply with the CBA by reinstating Bavousett with full back pay, restoring his seniority and any other benefits, and expunging the discharge decision from the employer's personnel records.

22.     The Award expressly reflects Arbitrator Clarke's interpretation and application of the relevant provisions of the CBA. The Arbitrator expressly construed and applied Article 2 – Rights of Management, Article 20 – Discharge and Discipline/Absence from Work, Article 27 – General Provisions, and the grievance and arbitration provisions of the CBA. Thus, the Award unequivocally draws its essence from the agreement and the Arbitrator always acted within the scope of his authority.

23.     The Award is final and binding in accordance with the terms and conditions of the CBA.

*M1's Refusal to Comply with the Award and Clarification*

24.     By an e-mail from Bud Dulworth, District 776 Business Representative, to Cheryl Shaw, Human Resources Director, dated September 20, 2021, the Union sought to determine when the Company would reinstate the Grievant in accordance with the Arbitrator's Award. Shaw responded by an e-mail, stating: "We will be in touch. We are doing a review of the arbitrator's decision which we just received a copy of." A copy of this e-mail is included in the *Appendix to Complaint* as Exhibit 5.

25.     By an e-mail from Dulworth to Shaw dated October 4, 2021, the Union again requested the Company to comply with the Award. A copy of this e-mail is included in the *Appendix to Complaint* as Exhibit 6 and is incorporated by reference.

26.     On October 4, 2021, M1 submitted a motion for clarification to Arbitrator Clarke. In response to the motion for clarification, the Arbitrator issued a Clarification of the Arbitration Award and transmitted it by e-mail to both parties dated October 27, 2021. The Clarification directed the Company to pay the Grievant back pay from the date of his discharge until the date of his reinstatement. But the Clarification also determined that the back pay award would be reduced by an offset for Bavousett's interim earnings and unemployment benefits as well as for any period

that he had been unable to work. Neither M1 nor the Union asserted any objection to the Award following issuance of the Clarification. A copy of the Clarification is included in the *Appendix to Complaint* as Exhibit 7.

27. By an e-mail dated November 1, 2021, Dulworth asked Shaw when M1 would return the Grievant to active employment and requested whether the Company needed any additional information to calculate his back pay in accordance with the Award as clarified. A copy of the e-mail is included in the *Appendix to Complaint* as Exhibit 8.

28. By an e-mail from Dulworth to Shaw dated November 3, 2021, the Union again followed up and inquired whether M1 was preparing to reinstate the Grievant. A copy of the e-mail is included in the *Appendix to Complaint* as Exhibit 9.

29. By an e-mail to Shaw dated November 4, 2021, Paul Black, District 776 President, demanded that M1 comply with the Award and reinstate Bavousett immediately. Shaw responded by e-mail on November 11, acknowledging that M1 had not complied with the Award and asserting that management had 90 days to decide whether to comply. M1 tacitly admitted in her e-mail that it had breached the labor agreement since there is no provision that entitles either party to refuse or delay compliance with the final and binding arbitration award. A copy of these e-mails is included in the *Appendix to Complaint* as Exhibit 9 and is incorporated herein by reference.

30. M1 has failed and refused to comply with the Arbitrator's Award and Clarification. At all times since the Award was issued, M1 has refused, and it continues to refuse, to reinstate Bavousett, restore his seniority rights, remit his back pay, and expunge the discharge decision from relevant personnel records.

*Breach of Contract*

31.     M1's refusal to comply with Arbitrator Clarke's Decision and Award, as clarified, violates Article 22, Section 5 of the CBA, which provides in relevant part: "The decision of the Arbitrator, within the purview of his/her authority, shall be final and binding on all parties."

32.     There is no contractual justification or basis for M1's repudiation of its obligation to comply with the Award and Clarification.

33.     Bavousett is a third-party beneficiary of the CBA. By reason of M1's willful refusal to comply with the Award, he has sustained the loss of valuable employment rights and substantial financial losses, and the Union has been forced to incur attorney fees and court costs to enforce the decision.

## Count One -- Enforcement of Arbitration Award

34.     The Union re-alleges paragraphs 6 to 33, inclusive, with the same force and effect as though such paragraphs were fully set forth herein verbatim.

35.     M1 has violated Article 22 and various other provisions of the CBA by refusing to comply with Arbitrator Clarke's Award and Clarification in FMCS No. 190715-09025.

36.     The Award should be enforced in accordance with 29 U.S.C. § 185. Thus, the Union is entitled to a declaration that that Arbitrator Clarke's Award, as clarified, is final and binding on both parties in all respects.

37.     The Union is entitled to the make-whole remedy in the Award including reinstatement of Michael Bavousett to his employment with full back pay, restoration of his seniority rights, and provision of all other employment benefits to which he is entitled. And M1 is required to expunge the discharge decision from all relevant employment records.

**Complaint – Page 8**

38. The Union is entitled to recover attorney fees and costs incurred in this civil action pursuant to 29 U.S.C. § 185.

## Prayer

Wherefore, Plaintiffs, International Association of Machinists and Aerospace Workers, Aeronautical Industrial District Lodge 776 and Local Lodge 2771, request that upon final hearing the Court:

1. Enter judgment for Plaintiffs declaring that Arbitrator Clarke's Award is final and binding on the parties, and ordering Defendant, M1 Support Services, LP, to comply with the Award and Clarification in all respects;

2. Order Defendant to reinstate Michael Bavousett to his employment with full back pay subject to all applicable offsets, restore his seniority rights, and provide all other employment benefits to which he is entitled. And M1 is required to expunge the discharge decision from all relevant employment records.

3. Award attorney fees and court costs to Plaintiffs; and

4. Grant Plaintiffs such other and further relief as may be necessary and proper.

Dated November 30, 2021.

Respectfully submitted,

*/s/ Rod Tanner*
**Rod Tanner**
State Bar No. 19637500
rtanner@rodtannerlaw.com
**Jamie King Harrison**
State Bar No. 11449230
jharrison@rodtannerlaw.com
**Aarika Johnson**
State Bar No. 24120927
ajohnson@rodtannerlaw.com
**Tanner and Associates, PC**
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
817.377.8833 (phone)
817.377.1136 (fax)

Attorneys for Plaintiffs

**Complaint – Page 9**